# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| KATHLEEN K. PARR, : | |
| Plaintiff, : | |
| | Case No. 3:11cv00193 |
| vs. : | |
| | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | |
| Security Administration, : | |
| Defendant. : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Kathleen K. Parr brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). This Court has jurisdiction to review the administrative denial of her applications. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), the administrative record (Doc. #6), and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff asserted during her administrative proceedings that she is eligible to receive DIB and SSI because she is under a "disability" within the meaning of the Social Security Act. Her ailments include pain and other problems related to her left-ankle fracture, pain resulting from her fractured elbows, low-back pain, and cervical-spine pain. An Administrative Law Judge concluded that Plaintiff could perform her past work as a cashier despite her impairments and, as a result, she was not under a benefits-qualifying disability. (Doc. #6, PageID at 57-58).

In the present case, Plaintiff seeks a reversal of the Administrative Law Judge's decision to deny her DIB and SSI applications, and a remand of this case to the Social Security Administration for payment of benefits. The Commissioner contends that an Order affirming the Administrative Law Judge's decision is warranted.

## II. Background

### A. Procedural History

Plaintiff filed her DIB and SSI applications in August 2007, asserting that she has been under a "disability" since January 6, 2003. As noted by Plaintiff, she previously filed for benefits in May 2006, alleging a disability onset date of January 6, 2003. *See* Doc. #6, PageID at 183-90. At the ALJ's hearing, Plaintiff's counsel requested the prior applications be reopened. *Id.*, PageID at 79. Social Security Regulations provide that a prior decision may be reopened for any reason within twelve months of the date of the initial determination notice. 20 C.F.R. §§416.1488 –1489. Plaintiff's prior applications

were *de facto* reopened because the ALJ adjudicated the entire period without invoking *res judicata*. *See Crady v. Secretary of HHS*, 835 F.2d 617, 620 (6th Cir. 1987); *see also* Doc #6, PageID at 52-58, 79. Following initial administrative denials of her applications, Plaintiff received a hearing before Administrative Law Judge (ALJ) Amelia G. Lombardo. ALJ Lombardo later issued the written decision concluding that Plaintiff was not under a disability and not eligible to receive DIB or SSI. (Doc. # 6, PageID at 52-58).

B.      **Plaintiff's Vocational Profile and Testimony**

Social Security Regulations recognize the reality that a person's ability to obtain and perform a paid job depends – in part – upon his or her age, educational background, skills, and training. *See* 20 C.F.R. §§404.1520(a)(4), 404.1560–.1568. Plaintiff was 55 years old on the alleged onset date of her disability. Under the Regulations, Plaintiff's age placed her in the category of a "person of advanced age." *See* 20 C.F.R. §§404.1563(e); 416.963(e)[2]; *see also* Doc. #6, PageID at 194. The Regulations explain, "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. . . ." 20 C.F.R. §404.1563(e).

Plaintiff has a high school education. (Doc. #6, PageID at 297). She has past relevant work experience as a welding-machine tender and a cashier. *Id*, PageID at 295, 304-11.

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

During the ALJ's hearing, Plaintiff testified that her source of income was social security retirement benefits and that she had retired at the age of 62. (Doc. #6, PageID at 81). She testified that she was first injured in 1996 and 1997 when she fractured both of her elbows and injured her back and shoulder. (Doc. #6, PageID at 81). She sustained another injury in January 2003, where she fell and fractured her left ankle. *Id*. at 81-82.

Plaintiff testified that she was in pain "24/7." She has to periodically sit down because her back starts to hurt. She also testified to leg weakness "like I don't have them under me anymore." (Doc. #6, PageID at 82). She took over-the-counter pain medicine and sleep aides.

Plaintiff estimated that she cannot stand or sit for more than 20 minutes at a time, that she could walk about an aisle and a half at a store, and that she could not lift more than 10 pounds, and must take frequent breaks while performing activities of daily living such as cooking, vacuuming, dishes, or laundry. (Doc. #6, PageID at 83-86). She shopped for groceries once a month.

### C.    Medical Opinions

#### 1.
#### Ron M. Koppenhoefer, M.D.

On October 16, 2003, Dr. Koppenhoefer examined Plaintiff on behalf of the Ohio Bureau of Disability Determination (Ohio BDD). (Doc. #6, PageID at 434-41). Plaintiff reported low-back pain on her right side with radiation into her right leg down to her calf. She also reported left-ankle pain and swelling after weight bearing activities for more than

6 hours. *Id*. at 434). Dr. Koppenhoefer found that Plaintiff had limited range of motion in her lumbosacral spine secondary to pain; her range of motion in her left ankle was limited; she had decreased sensation along lateral dorsal fourth and fifth toes; and her left-calf muscle was atrophied and was two centimeters smaller than her right, secondary to earlier ankle fracture. *Id*. at 435, 439, 441.

Plaintiff's lumbar spine x-rays revealed severe degenerative disc disease at the L5-S1 level with mild disc narrowing at L4-5. The radiologist also reported extensive aortic atherosclerosis and that her skeletal structures were osteopenic and there was a slight spinal list toward the left. (Doc. #6, PageID at 433). Dr. Koppenhoefer noted these findings were "compatible with the aging process." *Id*. at 436.

Dr. Koppenhoefer concluded:

> Based on my examination, Ms. Parr sustained a bimalleolar fracture involving the left ankle. This will probably lead to arthritic changes in the next decade. However, at the current time it gives her very few limitations. She would have no problems in regards to doing sedentary work activities or light duty work activities which would allow her to change her position from sit to stand. In addition, medium duty work activities would probably be allowable. She does have a history of back pain which is related to degenerative/aging changes. These changes would make it difficult for her to do activities which would require her to perform repetitive bending and stooping activities.
>
> The only limitation she would have in the workplace right now in regards to her ankle would be in regards to standing for 8 hours a day and climbing ladders greater than on an occasional basis. Being around unprotected heights would also be limited. Her repetitive bending and stooping are limited because of the back findings.

(Doc. #6, PageID at 436).

## 2.
## Aivars Vitols, M.D.

On September 27, 2007, Plaintiff was examined by Dr. Vitols on behalf of the Ohio BDD. (Doc. #6, PageID at 447-56). Plaintiff reported intermittent low-back pain with more severe exacerbation about two to three times a year. *Id*. at 447. She also experienced some discomfort in her right leg, pain and swelling of her left ankle, and bilateral elbow pain with spasm. Her low back pain, left ankle, and bilateral elbow pain are all exacerbated by activity.

On examination, Plaintiff had an antalgic gait, favoring her left lower extremity. *Id*., PageID at 450. Dr. Vitols noted lumbosacral tenderness to palpation, moderately increased muscle tone of the muscles around the lumbar spine, moderate lumbar muscle spasm, and "painfully restricted range of motion in all planes of the lumbar spine." *Id*., PageID at 450, 454. She had difficulty heel-to-toe walking. *Id*., PageID at 450. Left-ankle examination revealed generalized swelling, tenderness, and restricted and painful range of motion. *Id*., PageID at 451. Dr. Vitols' impressions included status post-left-ankle ORIF (open reduction, internal fixation) for a fracture with chronic pain and stiffness; chronic lumbosacral sprain and strain; and degenerative disc disease at L5-S1 with facet arthropathy. *Id.* Dr. Vitols concluded:

> Based on the foregoing clinical objective findings of this examination, the claimant presents with degenerative disc disease of the lumbar spine and does not have the capability of bending or twisting at the waist on a regular basis.

*Id.*, PageID at 452. Lumbar spine x-rays revealed "severe advanced disc space narrowing" at L5-Sl, moderate disc-space narrowing at L4-5, and facet arthropathy at both levels. *Id.*, PageID at 451. X-rays of her left ankle showed plate and screw fixation consistent with an earlier fracture. *Id.*

### 3.
### Diane Manos, M.D. and Gerald Klyop, M.D.

On November 5, 2007, Dr. Manos reviewed the record on behalf of the Ohio BDD. (Doc. #6, PageID at 458-66). Dr. Manos opined that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally; and stand, walk, or sit for about 6 hours each out of 8 hours. She could not climb ladders/ropes/scaffolds and could occasionally balance, stoop, or crouch. *Id.*, PageID at 460-61. Dr. Manos believed that Plaintiff was only partially credible since the ORIF site was not open and oozing, as she claimed. (Doc. #6, PageID at 458).

On March 14, 2008, Dr. Klyop reviewed the record on behalf of the Ohio BDD and opined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally; stand, walk and sit for about 6 hours each out of 8; no left-foot controls; no climbing ladders/ropes/scaffolds; and occasional balancing and climbing ramps/stairs. (Doc. #6, PageID at 468-69). Dr. Klyop also found Plaintiff to be only partially credible, noting, "severity is somewhat disproportionate to the totality of the evidence." (Doc. #6, PageID at 472).

**III.     Administrative Review**

### A. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id*.

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. Social Security Regulations

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Doc. #6, PageID 53-54; *see also* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work? The claimant's residual functional capacity is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.[3]

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C. **ALJ Lombardo's Decision**

At Step 1 of the sequential evaluation, ALJ Lombardo found that Plaintiff has not engaged in substantial gainful activity since January 6, 2003, the alleged onset date.

The ALJ found at Step 2 that Plaintiff has the severe impairments of osteoarthritis of the lumbosacral spine and the residuals of a fracture of the left ankle. The ALJ also found no substantial evidence of any other impairments that significantly limit Plaintiff's vocational capabilities. The ALJ noted Plaintiff had a remote history of degenerative disk disease of the cervical spine and a remote history of bilateral radial head fractures, but the record does not contain evidence of any current problems with either condition.

---

[3] 20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria set forth in the Commissioner's Listing of Impairments.

At Step 4, the ALJ concluded that Plaintiff retained the Residual Functional Capacity to perform light[4] exertional work, provided it does not require the operation of foot controls with the left foot. The ALJ further concluded at Step 4 that, in light of Plaintiff's Residual Functional Capacity, she was capable of performing her past relevant work as a cashier. (Doc. #6, PageID at 56-58).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (Doc. #6, PageID at 52-58).

## IV.  **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains

---

[4] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . ." 20 C.F.R. §404.1567(b).

evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.  **Discussion**

   A.  **The Parties' Contentions**

11

Plaintiff contends that the ALJ erred by not evaluating the medical source opinions and by omitting the functional-limitation opinions presented by examining/consulting physicians Dr. Koppenhoefer and Dr. Vitols. Plaintiff further maintains that the ALJ did not describe the appropriate legal standards applicable to weighing medical source opinions, including those presented by Dr. Koppenhoefer, Dr. Vitols, and two Ohio BDD reviewing physicians' opinions.

Plaintiff also contends that substantial evidence does not support the ALJ's assessment of Plaintiff's Residual Functional Capacity and that she is more physically limited than the ALJ found.

Plaintiff also argues that the ALJ failed to consider relevant vocational expert testimony that Plaintiff's past work as a cashier could not be performed if she needed to twist or bend at the waist regularly, or alternate between sitting and standing every 15 to 30 minutes. Plaintiff concluded that despite the ALJ's finding to the contrary, she cannot return to her past relevant work as a cashier. And she emphasizes that under the Social Security Administration's Medical-Vocational Guidelines – specifically, Grid Rule 202.04 – she is under a disability due to her age, education, and work experience, even if she could perform the full range of light work.

The Commissioner argues that substantial evidence supports the ALJ's no-disability determination. The Commissioner reasons, in part, "While the ALJ's articulation was less than ideal, any error is harmless, as the decision satisfactorily communicates how and why the ALJ concluded that Plaintiff was not disabled, and all of the medical opinions

fundamentally supported the ALJ's [Residual Functional Capacity] finding." (Doc. #8, PageID at 502). The Commissioner reasons that "no treating physician gave any opinion on Plaintiff's functionality. In other words, the ALJ was not bound by any physician's opinions, for no opinion was entitled to any special deference. Instead, as Plaintiff implicitly concedes, the ALJ was faced with four opinions that she synthesized consistently with the Regulations. . . . ." *Id*. at 503.

B. **Standards Applicable to Non-treating Medical Source Opinions**

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2.

The Regulations do not permit an ALJ to automatically accept or reject the opinions of a non-treating medical source. *See Id.* at *2-*3. And the Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. §404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in §404.1527(d) including, at a

13

minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. §404.1527(f); *see also* Ruling 96-6p at *2-*3.

   C.   <u>Analysis</u>

The ALJ began her discussion of Plaintiff's Residual Functional Capacity by explaining that she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-03p." (Doc. #6, PageID at 56). The ALJ, however, did not evaluate any of the four medical source opinions of record provided by Dr. Koppenhoefer, Dr. Vitols, Dr. Manos, or Dr. Klyops. At best for the Commissioner, the ALJ mentioned these medical source opinions but her mention of them did not consider them as the Regulations mandate. Specifically, the ALJ noted that Dr. Koppenhoefer examined Plaintiff on October 16, 2003 for the State agency, but the ALJ did not mention Dr. Koppenhoefer's functional restrictions. Dr. Koppenhoefer thought that Plaintiff could perform light work as long as she did not perform "repetitive bending and stooping," and would be allowed to "change her position from sit to stand." (Doc. #6, PageID at 436). Likewise, the ALJ summarized Dr. Vitols' September 27, 2007 consultative examination report without mentioning Dr. Vitols' opinions about Plaintiff's functional limitations. Dr. Vitols concluded, for example, that Plaintiff did "not have the capability of bending or twisting at the waist on a regular basis." (Doc. #6, PageID at 452). The Regulations required the ALJ to weigh the medical source opinions under the legal criteria set forth above, *supra*, §V(B) – criteria

that is mandatory and plainly set forth in the Regulations and repeatedly described in case law. *See Rogers*, 486 F.3d at 242-43; *see Bowen*, 478 F.3d at 747; *Wilson*, 378 F.3d at 544.

The ALJ's consideration of the opinions provided by the non-examining record-reviewing physicians for the Ohio BDD – Drs. Manos and Klyop – was equally cursory. The ALJ wrote:

> Based on a review of the medical record, a State Agency physician concluded that the claimant would be able to perform a reduced range of medium work. On reconsideration, a second State Agency physician concluded that the claimant would be able to perform a reduced range of light work. Both physicians based their restrictions on diagnoses of degenerative changes of the spine and the residuals of left ankle fracture (Exhibits 13F and 14F).

(Doc. #6, PageID at 56). The ALJ did not otherwise address the opinions provided by Drs. Manos or Klyops and thus did not evaluate their opinions under any of the required regulatory factors, including supportability, consistency, and specialization. *See* 20 C.F.R. §404.l527(d), (f); *see also* Social Security Ruling 96-6p.

The Commissioner argues that any error committed by the ALJ was harmless because her decision satisfactorily communicates how and why she concluded that Plaintiff was not under a disability and because "all of the medical opinions fundamentally supported the ALJ's [Residual Functional Capacity] finding." (Doc. #8, PageID at 502). This contention lacks merit. Again, Dr. Koppenhoefer thought that Plaintiff could perform light work as long as she did not perform "repetitive bending and stooping," and would be allowed to "change her position from sit to stand." (Doc. #6, PageID at 436). The ALJ did

15

not include these limitations in his assessment of Plaintiff's Residual Functional Capacity. Although the Commissioner offers several reasons for the ALJ's omission of these limitations, *see* Doc. #8, PageID at 504-06, the ALJ did not explain why she rejected Dr. Koppenhoefer's opinions about these limitations. And, the Commissioner's post-hoc rationalizations fail to demonstrate harmless error in the ALJ's failure to evaluate Dr. Koppenhoefer's opinions under any of the regulatory-mandated factors. *Cf. Wilson*, 378 F.3d at 546 ("It is highly doubtful that the Commissioner's *post-hoc* rationalizations can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh a treating medical source opinion as required by the Regulations. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.).

The Commissioner also points out, with regard to Dr. Vitols, that the ALJ's failure to limit Plaintiff to no bending or twisting at the waist on a regular basis has no vocational significance because of the vocational expert's testimony. The Commissioner explains, "The [vocational expert] testified that the cashier job required frequent bending and twisting at the waist, and there is no evidence that this is inconsistent with Dr. Vitols's restriction against performing those functions 'on a regular basis,' which Plaintiff explicitly defined as 'throughout the eight-hour day (Tr. 56). Plaintiff's definition is in line with the [vocational expert's] explanation that a function performed from 67 to 99 percent of the day falls under the heading of 'constant' and not 'frequent.' (Tr. 56).

Plaintiff has not shown that Dr. Vitols's opinion eliminated the cashier job." (Doc. #8, PageID at 504). This misreads the vocational expert's testimony. When questioned by Plaitniff's counsel, the vocational expert testified as follows:

> Q. If the claimant were not capable of bending or twisting at the waist on a regular basis – regular basis means as needed, but off an on throughout the eight-hour workday. Would that eliminate these past work jobs?
>
> A. Yes.

(Doc. #6, PageID at 98). The vocational expert further testified, "Based on my observations of the job as a cashier, she would have to do that on a frequent basis" or less often – only 34 to 66 percent of the day, according to the vocational expert. *Id*. But, Dr. Vitols' opinion says nothing probative about whether Plaintiff could bend or twist frequently. And the Commissioner does not point to medical evidence or opinion indicating that Plaintiff could perform bending and twisting frequently during an eight-hour workday. Consequently, considering Dr. Vitols's opinion, the Commissioner must abide by the vocational expert's answer that Plaintiff's inability to bend or twist on a regular basis would prevent her from performing her past cashier's job. *Id.*; *see Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (A proper hypothetical question should accurately describe the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant."*); see also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## VI. Remand For Benefits Is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).

Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff relies on Grid Rule 202.04 to support her contention that is under a disability due to her age (55 and beyond), education, and work experience, even if she could perform the full range of light work. "An ALJ is to employ the grids, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, at the fifth step of the disability determination, after the claimant has been found not to meet the requirements of a listed impairment but to nevertheless be incapable of performing past relevant work." *Jordan v. Commissioner of Social Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The uncontradicted opinions provided by Dr. Koppenhoefer and Dr. Vitols, along with the vocational expert's testimony, constitute strong evidence that Plaintiff could not perform her past relevant work as a cashier, and the

18

contrary evidence is weak. In light of the ALJ's assessment of her residual functional capacity for a limited range of light work, and given Plaintiff's age (55 and beyond), education, and work experience, Grid Rule 202.04 establishes that she is under a disability.

Accordingly, a remand of this case to the Social Security Administration for an award of benefits is warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. Plaintiff's case be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. §405(g) for payment of Disability Insurance Benefits and Supplemental Security Income consistent with the Social Security Act; and

3. The case be terminated on the docket of this Court.


June 7, 2012

    s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).